Good morning ladies and gentlemen. Our first case for argument this morning is Kelly v. Allstate. Mr. Frye. Please the court, counsel. This is an appeal from the district court which determined that there had not been full compliance with the terms of an insurance policy covering his home and contents and therefore entered summary judgment. Our position is a summary judgment was inappropriate and should not have been granted because there had been compliance with all of the items that were able to be produced by Mr. Kelly that they requested except for an issue about whether he should turn over a Facebook password and identification information to let them copy all of that or whether they would come to Terre Haute, Indiana where the policy holder lived and had his Facebook located to examine that. Allstate's counsel chose instead of doing that to keep contending that there was a breach of the policy conditions because Mr. Kelly would not turn that over. Even before the Facebook messages issue there's the issue of the examinations under oath. So I think I Yes. And whether Mr. Kelly signed the transcript or transcripts and that's where my question comes from. Okay. He set twice. He set twice. He set two different times. Yes and he signed the first one as soon as he received it. The second one. Now that I need to ask you. Yes. Is there evidence in the record of him signing that first transcript? Because I don't see it. Well I believe there is. I think it was it was never raised anyway in the district court as to whether the first one wasn't signed. I think there is there's a record of where counsel sent him back the signed signature page. I'm not sure that's in the record or not. Okay. I think that that did occur and I don't think Mr. Walker will contend that that he did not sign the first one. I don't think that's ever been raised. So that's the August 6, 2021 transcript and then there's the correct. Okay. Do you know the time? He only received it on March 1st. That's when they said that the court reporter did not send the transcript to him. Mr. Mr. Walker contended in December and January that he had not signed it and kept arguing he was going to declare the policy was not being followed but we didn't he didn't have Mr. Kelly didn't have the transcript until March 1st. He signed it when he received it. Do you know the time? At the time of day? Yes. It was sent to him and roughly 10 o'clock. He signed it I think at 2 o'clock. It's in the in the record. I could look it up and but it's it's clear it was later the same day but there's a few hours difference. He had a chance to get the office read it and sign it. And by later the same day you're referring to the fact that that morning he filed the amended complaint naming the proper party. I think that's true. I think they actually got filed on the second I believe because that's when the summons was tendered to the clerk of the court but but it was around the same time that the second or the second EOA was signed yes. But you would agree he he submitted to the court March 1st in the morning. He signed the EOA. No I'm talking about the amended complaint naming the proper party for Allstate. I think it was it was actually filed March the 3rd by the court but. I'm not asking you when the court docketed it. That's when the court docketed it. I'm asking when Mr. Kelly filed it. My understanding is he tendered at the court sometime on the 1st. In the morning. In the morning I believe. We also contend that the the trial court basically looked at federal rule civil procedure 15 C which is the the amendment of a pleading to argue that the the complaint was actually filed on January 28th of 22 and when it related back for the purposes of protecting the the filer from the statute of limitations being an issue. Indiana law requires the tendering of a summons to the court as I we cited in our brief to initiate a claim or to bring a claim in action against the party and that didn't happen until March of 22. It did not happen in January of or did not happen back in in January when the complaint was filed. The original complaint was filed and Mr. Kelly as the court record shows named the wrong party because he didn't have a copy of the policy had been burned in the fire. So when he got it he got it also March 1st I think from Mr. Walker. It was sent to him at the same time I believe that that that he's that he he got the the second EEO to sign it. Let's assume we agree with you not so much on the relation back and you know the legal issues there but that March 1st is the relevant date of the the complaint that we need to deal with. I think that's I think that's true depending on whether. I'm in the middle of the question though. I'm sorry. Let's assume we agree with you that March 1st is the date we need to be law and Indian law also requires exact adherence to the contractual policy to the terms of the contract which require a signed examination of under oath. What's your response to the issue that as you just explained to the court Mr. Kelly did not sign the examination under oath until the afternoon of March 1st. He didn't have it to sign so it's impossible to do that. I think this case really involves whether somebody has to do something impossible before they can follow. Well I see it seems to me you could be looking at it in an inverted manner because the policy says you can't sue until you've abided by the terms of this policy. Correct. So signing is one of the terms of the policy. He signs it then he can sue the minute after he signs it but he's got to sign it first. Well it seems to me your honor that if it happens the same day the time of day does not make that make a difference. I mean he didn't receive the the document until that morning. But if he knows the policy terms of his contract he knows he he's done his part. Now he can sue. I agree but he signed it and then it was transmitted that afternoon to the party the same day. So we believe by the 1st of March he had complied with full compliance with the policy. So then he could sue. Well then he could sue it would make his suit. It seems to me there's no difference to the defendant here or the in this case the appellee as to whether they receive in the morning or the afternoon. By the same day they had the same day the suit was filed they had the signed EOL or EUL in their possession because it was transmitted on the 1st as well. Is there any Indiana law that says that that he complied by March 1st and therefore he complied with the terms of the policy? There's no Indiana law that says what with relationship to the your question I think there's no Indiana law that says that that's compliance with the policy. There is case law in Indiana that says that there's not compliance if you don't sit for the examination under oath and if you don't tender back a document or documents you have in your possession the Morris case talks about that. There's no Indiana case yet that says that the failure to actually sign the examination or oath that you sat for is a breach of the policy. What is the your duties after loss provision require? I think it requires you to obtain all the documents that you are requested to obtain. In this case there were virtually hundreds of documents that Mr. Kelly went and got and provided since he had none of those at his home he had to go out and get them. The case law says you can't refuse to go get things that are available to you so he did that. I think he has to do that. He has to sit for an examination under oath. He sat for two. He does have to sign that at some point but I think they have the transcript already and I don't know that there's any case yet that has said the failure just to sign it is a breach of the policy conditions. The failure to sit for it clearly is the failure they are there's a case where they argue back and forth about whether it's appropriate to do it and how to do it and and basically follows a suit in the meantime that's that's not compliant. If we took that argument to its logical end wouldn't that mean that the duties after loss provision is kind of the policy requires strict compliance with the duties after loss provision and the duties after loss provision for instance says you need to sit for an examination under oath. If the test was though you can sit for the examination under oath at any time so long as you do it then you could sue whenever you wanted to. You know in other words accident, lawsuit, right, then examination under oath. I agree with the judge that you couldn't refuse to sit under but I think here he did sit for the examination they must have had a transcript at some point we don't know when Allstate got the transcript we didn't get it for him to sign till the 1st of March but but he did actually sit for it I think the refusal to sit for it is certainly always going to be found to be a breach of the policy. The policy talks about not just sitting it talks about signing. Yeah that's correct. So does your argument require us to read that language out of the policy? I think my argument says that if that the only thing there is is failing to sign after they've gotten the the transcript to the party there's no case yet that says that is a breach of the policy. Do we need a case if that's the plain language of the contract? It hasn't been reached yet that this would be the first case that that's been done in. I think it here it's difficult to to see if the there's a there's apparently a one-year policy period that you bring have to bring an action in we believe there's evidence in the record there's one or two years we're not really clear which one it applies but if you have to wait to bring suit until after you get the transcript signed and back to you to execute even though you sat for it there'd be a there wouldn't be a failure to comply with the policy. We can't control the transcript comes to him it could be a sometime later I've had court reporters take a good deal longer than this one did to get the transcript to the party to sign the the examination under oath. Okay you're in your rebuttal time so I won't ask you anything else. All right thank you. Thank you Mr. Frye. Mr. Walker. Good morning your honors. My name is Jason Walker. I'm here for Allstate Vehicle and Property Insurance Company. If I may address a couple of issues counsel raised. One, he most recently said that the insured meaning Mr. Kelly could not control when the transcript came to him and I note that in the appellate briefs there was a constant and careful wording of that language. He signed the transcript when it came to him but Mr. Kelly was at all times represented by an attorney and the transcript was prepared by a court reporter in short order after each of the examinations under oath. So at any point in time after the November 2022 EUO, sorry 2021 EUO, Mr. Kelly's attorney could have ordered that transcript and gotten it. He could have contacted me if there was any trouble that he was having getting that transcript. Instead he waited until the day he filed suit to actually request a copy of that transcript from the court and then got it. So he absolutely could control when he received that transcript. Counsel referred to or alleged that Mr. Kelly fully complied with the terms and conditions of the policy. Also not true. He did not submit the Facebook archive. Well I have a question about that because show me where the contract requires Mr. Kelly to turn over Facebook messages. There is no language in the policy, Your Honor, to that effect and I concede that willingly. The policies are drafted so as to be inclusive and to apply to multiple claims across multiple contexts and there's no Indiana case law that we could find that said a policy only applies to those specific items enumerated in there. The purpose of those provisions is well fleshed out in Indiana case law meaning those cooperation provisions are provided to allow the insurance company to fully investigate a claim and therefore those requests are going to be on a case-by-case basis analyzed with regard to the relevance to that particular claim or investigation. Here we have Mr. Kelly telling us on the record that he was communicating by way of Facebook messenger with the one person that could corroborate his alibi on the day of the first fire and he's telling us that but not giving us those records. So clearly confirming his whereabouts and activities on the day of the fire and also his version of events as to why it was that he coincidentally decided to visit a paramour that he had not seen for roughly 20 years. So you can you can you just confirm for us which language of the policy you're relying on to demand the Facebook messages. Under the duties after loss the paragraph that begins with sorry it's subparagraph E. Produce receipts for any no sorry before that D. Give us all accounting records bills invoices other vouchers or certified copies which we may reasonably request to examine and permit us to make accounting records bills and vouchers. Yes. So you want Facebook messages to be bills vouchers and accounting records. We believe that that general nature of those cooperation provisions allows an insurance company to request documents even if they are not specifically enumerated but if they are reasonably relevant to the insurance company's investigation. I thought you were going to point me to a general cooperation clause. There's no sorry the language in the your dues after loss meaning that you must give us these these documents or give us documents that we request. We interpret that to mean documents that are reasonably related to the subject matter of the investigation and in this case there's no question the Facebook archive was in fact reasonably related because Mr. Kelly told us it was and in fact after we got it we did find that there were messages in there with the with the with Ms. White who was the person he went to visit the day of the first fire. Moving forward if I could your honors address the issue related to the filing of the complaint. It is a fact that Mr. Kelly filed his complaint back on January 21 of 2022 and then he filed a motion for leave to amend that complaint. The court granted the motion for leave. Mr. Kelly then served that amended complaint on the proper entity and that under rule 15 whether that's the state court version or the federal version that amended complaint relates back and I've not heard anything or read anything to explain why that relation back rule would not apply in this case. So it's our position that the district court absolutely got it right and that Mr. Kelly's amended complaint does relate back to the original filing date making it well before he signed the EO transcript but as your honor noted even if we were to take the March 1 date of filing as the correct date it still would have been filed in the morning before he actually signed the EO transcript. So I didn't either case he did not satisfy that portion of the policy and the policy provision that requires his signature is in the conjunctive right so as your honor pointed out the EO provision part of the requires him to submit to an EO and then to sign that transcript that's a single condition and the connecting clause that and is conjunctive meaning to satisfy it you have to both sit for the EO and sign it so we would we would say that he did not actually satisfy the EO condition but even if you wanted to parse it out split into two and say that he did sit for the EO he still nonetheless did not. I wish you would use real words rather than weird initialisms. What's I apologize I don't know what initialism is your honor. You might think of it as an acronym but it's not it's not pronounceable. Examination under oath. Yes. Absolutely. Use real words instead of made-up things that aren't in dictionaries. Understood. I will call it an examination under oath. The transcript was something he was required to sign and he did not do it it seems very straightforward from our position. The Facebook archive we believe was something that he was required to produce he did not do so until after he filed suit and it was clearly relevant and it prevented Allstate from asking him questions about it and so we would say that his failure to do that even if we wanted to review that portion of the policy as a as a under a prejudicial standard even if we didn't want to say it required exact compliance with the document production it nonetheless absolutely did prejudice Allstate in confront Mr. Kelly with the information in that archive. We did not Allstate was not requesting his ID and password. We didn't want that. Allstate wanted the Facebook archive. We offered to help him download it and in order to do that he would need to give us that information and at one point it seemed like he had no problem with that. Later on he changed his mind and didn't want to give it to us but that was the Allstate had no interest in his Facebook password or ID and I had conversations with counsel explained to him that we could do it for him but it would still the actual archive itself would be sent to Mr. Kelly and that he have to send it back to us and he could simply change his password and re-secure the whole thing. So I just want to clarify that Allstate's interest was in the substance of the archive and not in his ID or password. At this point Allstate has everything it needs though because he ultimately agreed to turn over and did then turn over the Facebook. After he yes your give us the archive and he did sign the transcript of the examination under oath correct. So you know I believe that the rest I've addressed what I need to with counsel I don't have anything more to add on this topic so I would just deal the rest of my time. If there's no other questions. Thank you counsel. Thank you. Anything further Mr. Frye? Yes. Briefly if I may. With regard to the Facebook issue as far back as December Mr. Nichols who represented Mr. Kelly was trying to get Mr. Walker to come and look at the Facebook and downloaded himself and he gave him his cell phone number the record shows he made an effort to try to get them to come and actually download it in Terre Haute and Mr. Walker even agreed at one point that he would send somebody from Allstate to come to the office and download that and they never did that rather they wanted to avoid the policy by not having to pay any any damages to Mr. Kelly so he pursued the summary judgment instead. We I don't know the district court actually relied on the Facebook issue it talks about it it says that he was required to do certain things under that I don't know the policy does require that I don't think there's ever been a case yet in or give the password and ID for the Facebook account is a failure to cooperate and failure to comply with the terms of the policy. This would be a first case that says that. It's clear to us that from December on Allstate was trying to get out of paying this damage claim. They demanded things that such as the Facebook archives that we couldn't produce. Mr. Kelly tried to download it tried to copy it couldn't do that and told them that. We wrote their emails in the record showing that they said come look at it you can do that we can't do it and they didn't want to do that they wanted to avoid the policy so that's our position. Thank you for your time judges. Thank you. The case is taken under advisement and the court will take a brief recess before calling the second case.